UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 1:10-CR-110-1 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| MARY REVELS | ) |
| A/K/A "CRAZY MARY" | ) |

## **MEMORANDUM**

In the course of the sentencing hearing of Defendant Mary Revels ("Defendant"), the Court was presented with a novel issue. That issue is the standard a court should use in accepting the qualifications of an expert witness in a sentencing hearing when the Federal Rules of Evidence do not apply. Although the Court had assumed the subject matter of the witness's testimony would be contested, the Court had not anticipated the witness's qualifications as an expert would be an issue or his ability to testify.

After giving careful consideration to the parties' arguments as well as the relevant United States Sentencing Guidelines and case law, the Court will exercise its discretion to **EXCLUDE** the testimony of Mr. Baggett on the grounds that he is not qualified to testify as an opinion witness in the areas of document examination and handwriting analysis (*See* Court File No. 432). The Court will also **DENY** Defendant's motion for the Court to consider the opinion testimony of an additional document examiner (Court File No. 438) and **GRANT IN PART and DENY IN PART** Defendant's motion for a continuance (Court File No. 437). Although the Court will not continue sentencing for Defendant to obtain a new document examiner, the Court will grant her request to reschedule the hearing on a date that will accommodate the schedule of Dr. Rafuls, another Defense witness in this case. Defendant's sentencing hearing will be reconvened on **Friday, May 11, 2012 at 9:00 a.m.**

## I. RELEVANT BACKGROUND

Along with thirteen codefendants, Defendant was indicted for her involvement in a conspiracy to manufacture and distribute methamphetamine between March 2006 and July 2010. Defendant pleaded guilty to the lesser included offense in Count One of the fifteen-count Indictment--that is, conspiracy to manufacture or distribute five grams or more of actual methamphetamine or fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Defendant was originally scheduled for sentencing on February 16, 2012. However, Defendant sought a continuance of the sentencing date to prepare for sentencing, resolve outstanding objections to the Presentence Investigation Report ("PSR"), and confer with potential experts (Court File No. 398). The Government did not object to Defendant's request, and the Court granted a continuance until March 22, 2012 (Court File No. 399).

At the March 22 sentencing hearing, Defendant objected to the drug quantity amount used to establish her offense level and guidelines range. This was one of the objections the parties had been unable to resolve prior to sentencing. Defendant averred her driver's license had been stolen on more than one occasion during the time frame of the conspiracy and other coconspirators may have used her license to purchase pseudoephedrine. Following from this theory, she alleged that some or all of the electronic signatures used to determine her drug quantity amount were forged and that the drug quantity amount was, therefore, inaccurate.

At the hearing, Defendant attempted to tender Mr. Curtis Leo Baggett as an opinion witness in the areas of document examination and handwriting analysis. Although it was not specified, the

Court anticipated that the witness would be offered as an expert in the subspecialty of examination of electronic signatures or digital signatures created by computer technology. Electronic or digital signatures are now commonly used in retail establishments, and the challenged signatures of Defendant were written in this form when purchases of pseudoephedrine were made. The system that maintains and stores these signatures in Tennessee is called MethCheck.

At the Government's request, the Court gave the parties an opportunity to conduct a voir dire examination regarding Mr. Baggett's qualifications. During voir dire, Mr. Baggett was questioned by both parties about his education, training, and experience. The Government also questioned Mr. Baggett about his criminal history and other matters that went toward his credibility. At the end of the second day of questioning, the Government formally objected to Mr. Baggett as an opinion witness on the grounds that he was not properly qualified and lacked sufficient credibility.

Mr. Baggett's evident deficiencies created an unexpected and unforeseen problem for the Court. The Court had anticipated that if there were questions raised concerning Mr. Baggett's qualifications, the Court would just consider those questions when deciding how much weight to give his opinion. The Court took this view both because it was the factfinder and because the Federal Rules of Evidence do not apply at sentencing. If the Court found the questions raised persuasive, then the Court would discount Mr. Baggett's testimony. If the Court found the questions raised unpersuasive, then the Court would credit Mr. Baggett's testimony. Mr. Baggett's deficiencies were so great, however, that the Court was not comfortable with this approach.

The Court temporarily adjourned the hearing and ordered the parties to submit briefs discussing the proper standard the Court should apply at sentencing in determining whether Mr. Baggett should be allowed to testify as an opinion witness. The Court acknowledged that the Federal

Rules of Evidence do not generally apply at sentencing. Therefore, among other things, the Court requested that the parties consider what role Rule 702 of the Federal Rules of Evidence as well as the two leading Supreme Court cases on expert witnesses--that is, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)--should play, if any, in the Court's determination. The Court also highlighted some of its specific concerns regarding Mr. Baggett's qualifications and credibility.

Both parties filed briefs (Court File Nos. 431, 432) and responses (Court File Nos. 434, 436).[1] Defendant then subsequently filed a motion for the Court to consider the opinion testimony of an additional document examiner (Court File No. 438) and a motion for the Court to continue the sentencing hearing (Court File No. 437). The Government opposed Defendant's request for an additional document examiner and opposed in part Defendant's request for a continuance (Court File No. 440).[2] Most recently, Defendant submitted a reply brief (Court File No. 442) and a summary of the reports to support her request for an additional document examiner (Court File No. 443).

Now that the parties have fully briefed these issues for the Court, the Court will proceed to discuss the standard it will apply as well as its determination regarding whether Mr. Baggett will be allowed to testify. The Court will also address Defendant's motion for a continuance and motion to obtain an additional document examiner.

---

[1] In its brief, the Government also recommends that the Court not grant Defendant a reduction in her offense level for demonstrating "acceptance of responsibility" (Court File No. 432). The Government contends Defendant's efforts to challenge the drug quantity through Mr. Baggett are inconsistent with complete acceptance of responsibility. The Government also notes that responding to this issue has been particularly costly and time-consuming. The Court will take this matter under advisement but will reserve ruling until later in the sentencing process.

[2] The Government does not oppose a continuance to the extent it is to accommodate the schedule of another Defense witness, Dr. Rafuls, who was already set to testify.

## II. MR. BAGGETT AS AN OPINION WITNESS

### A. Applicable Law

Parties may present evidence on their objections to the PSR during sentencing. Fed. R. Crim. P. 32(i)(2). However, it is well established that the Federal Rules of Evidence generally do not apply during a sentencing hearing. Fed. R. Evid. 1101(d)(3); *United States v. Christman*, 509 F.3d 299, 304 (6th Cir. 2007). In determining whether evidence is admissible, a sentencing court should apply the "minimum indicia-of-reliability standard" provided in the United States Sentencing Guidelines. *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007). Section 6A1.3 of the Guidelines reads as follows:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*.

USSG § 6A1.3(a) (emphasis added); *Moncivais*, 492 F.3d at 658-59. This is a "relatively low hurdle." *Moncivais*, 492 F.3d at 359. With that said, "pursuant to § 6A1.3, 'the district court is obligated to rely on reliable evidence at sentencing.'" *Christman*, 509 F.3d at 305 (internal quotation and citation omitted).

In the instant matter, Defendant has tendered Mr. Curtis Leo Baggett as an opinion witness in support of her objection to the drug quantity, but the Government moves to exclude such testimony because the witness lacks sufficient qualifications and credibility to be reliable. At trial, a court would turn to Rule 702 of the Federal Rules of Evidence as well as related case law, such

5

as *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), to resolve the dispute over an opinion witness's qualifications as well as whether his testimony is admissible. *See, e.g.*, *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294-95 (6th Cir. 2007); *United States v. Thomas*, 223 F. App'x 447, 457 (6th Cir. 2007). Yet because the Federal Rules of Evidence are not generally applicable at sentencing, the Court is not bound to apply Rule 702 or the case law interpreting Rule 702. *See United States v. Bowker*, 372 F.3d 365, 392 (6th Cir. 2004) (holding that the district court did not abuse its discretion by not applying Rule 702 before admitting an opinion witness's testimony because the rules "are by their own terms expressly inapplicable to sentencing hearings"), *vacated*, 125 S. Ct. 1420 (2005), *recons. on remand*, 125 F. App'x 701, 702 (6th Cir. 2005) (reinstating original opinion with the exception of an unrelated section); *see also United States v. Ferron*, 357 F.3d 722, 724 (7th Cir. 2004) (noting the district court misapplied the law because the court felt "obligated" to reject the expert's testimony under Rule 702 and *Daubert*). Although this Court recognizes that it is not bound by Rule 702 or the related case law, it will still briefly discuss Rule 702, *Daubert*, and *Kumho*--as well as some of the case law surrounding the admissibility of handwriting expert testimony under Rule 702--given that these sources provide insight on how a Court can assess the reliability of an opinion witness's testimony. The Court reiterates, however, that its primary focus in this analysis will be to determine whether the opinion testimony of Mr. Baggett can satisfy the "minimum indicia-of-reliability standard" provided in § 6A1.3.

Rule 702 outlines what a court should consider when determining whether an opinion witness should be allowed to testify. It reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[3] Notably, Rule 702 requires at the outset that expert witnesses be "qualified to testify to a matter relevant to the case." *Surles*, 474 F.3d at 293. "[A] proffering party can qualify their expert with reference to his 'knowledge, skill, experience, training or education.'" *Id.*

*Daubert* and its progeny are commonly referenced when Rule 702 is being applied. In *Daubert*, the Supreme Court explained that a trial judge has the responsibility of ensuring "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. A court can consider factors such as whether the theory or technique can be tested, whether it has been subjected to publication and peer review, the rate of known or possible error, and whether the theory or technique is "generally accepted" within that particular community. *Id.* at 593-94. The Supreme Court emphasized that this assessment is "a flexible one." *Id.* at 594. Although *Daubert* focused exclusively on the admissibility of opinion testimony based on "scientific

---

[3] The 2000 Advisory Committee Notes to Rule 702 states that experience may be the dominant or only basis for some opinion testimony. Specifically, the note provides that

> [n]othing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); . . .

Fed. R. Evid. 702 advisory committee's note.

7

knowledge" under Rule 702, the Court expanded *Daubert*'s holding in *Kumho* so that it would also apply to testimony involving "'technical and 'other specialized knowledge.'" *Kumho*, 526 U.S. at 141. Reiterating that the test from *Daubert* is "flexible," the Court in *Kumho* noted that a trial court "*may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.*

In keeping with many other Circuits, the United States Court of Appeals for the Sixth Circuit has expressed that handwriting experts and forensic document examiners can offer opinion testimony in person and through deposition under Rule 702. *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997). *See, e.g., United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005); *United States v. Crisp*, 324 F.3d 261, 270-71 (4th Cir. 2003); *United States v. Jolivet*, 224 F.3d 902, 905-06 (8th Cir. 2000). In *Jones*, a case predating *Kumho*, the Sixth Circuit stated that "expert handwriting analysis is a field of expertise under the Federal Rules of Evidence. This decision, however, does not guarantee the reliability or admissibility of this type of testimony in a particular case. Because this is non-scientific expert testimony, its reliability largely depends on the facts of each case." *Jones*, 107 F.3d at 1160. The Sixth Circuit affirmed the district court's decision to admit the handwriting expert's testimony under Rule 702 because the district court thoroughly considered the expert's "various training experiences, his job responsibilities, his years of practical experience, and the detailed nature of his testimony in this case." *Id.* at 1161. Among other things, the handwriting expert was employed by the U.S. Postal Inspection Service Forensic Laboratory as a forensic document analyst, completed a two-year course in-residence with the U.S. Army Criminal Investigation Laboratory as part of his training, received additional training at numerous facilities, had performed more than one million comparative examinations, published articles, and testified

over 240 times in various courts. *Id.* Even post-*Kumho*, this Circuit concluded a district court had properly admitted the opinion testimony of a handwriting examiner under Rule 702 where the court had "ensured that the testimony came from a highly experienced handwriting examiner who carefully explained the basis for his opinion."*United States v. Sanders*, 59 F. App'x 765, 767 (6th Cir. 2003).

### B. Qualifications

Here, the Court's primary concern is whether Mr. Baggett is sufficiently qualified to testify as an expert at sentencing. Defendant and the Government extensively questioned Mr. Baggett over the course of two days regarding his knowledge, experience, education, and training. The Court also had an opportunity to review Mr. Baggett's curriculum vitae (Court File No. 413-8). Mr. Baggett received a B.A. and M.Ed at McNeese State University, which is located in Lake Charles, Louisiana, and performed some post graduate work at the University of Houston. He avers he also received education and training at the U.S. Army Military Police Officer's School. He participated in a two-year apprenticeship with Mr. Ray Walker, a handwriting expert and document examiner. He also taught and, for a period of time, served as a dean at the School of Forensic Document Examination at Handwriting University, which is run by his son. Mr. Baggett claims he has participated in several training sessions and conferences, the majority of which were conducted through Handwriting University. Mr. Baggett further testified that he is a member of the American College of Forensic Examiners, the National Questioned Document Association, and the World Federation of Handwriting Experts. Finally, he claims he has been qualified and/or appointed as an expert and has testified or offered deposition testimony in over fifty cases between 2005 and 2012. Most recently, Mr. Baggett was accepted as an expert on February 9, 2012, in a case before the United States

District Court for the Northern District of Texas.

On the surface, Mr. Baggett's credentials are noteworthy, and they certainly impressed Defendant enough to retain him as an opinion witness. Yet, in this field, due diligence necessitates probing beneath the surface, and in Mr. Baggett's case, even a small amount of probing would have unearthed a rather different picture. During voir dire, the Government whittled away at Mr. Baggett's qualifications, beginning with his training and experience. Mr. Baggett admitted that his undergraduate and graduate studies were of no particular relevance to his training as a document examiner, and that he could not recall whether his Military Police Officer's School training addressed forensic document examination techniques. The Court is willing to accept Defendant's proffer of a statement made by the American Board of Forensic Document Examiners ("ABFDE") that "[l]ike most forensic disciplines, on-the-job specialized training from experienced examiners is the only way to acquire expertise." Yet even taking this into account, Mr. Baggett's "on-the-job" training for two years under Mr. Walker is questionable given concerns that were raised about Walker's qualifications and credibility. In a case predating *Daubert* but occurring after Mr. Baggett was trained under Walker, the Fifth Circuit affirmed a district court decision not to qualify Walker as a handwriting expert. *United States v. Burgeois*, 950 F.2d 980, 986-87 (5th Cir. 1992) (noting the district court "was in the position to assess Walker's credibility and to evaluate the conflicting evidence on Walker's qualifications"). From this questionable training experience, Mr. Baggett proceeded to start Handwriting University with his son, and then both taught and later received continuing education at Handwriting University.

In determining whether an opinion witness is qualified, a court may also consider a witness's membership and leadership in professional associations. The only professional organization in the

field of document examination that offers certification is the ABFDE. Neither Mr. Baggett nor his mentor Ray Walker is an ABFDE member. Although Mr. Baggett testifies that he is a member of three other professional organizations, his membership in those groups reveals very little about his training or credentials given that the organizations do not have a certification process or require proficiency testing. Instead, as discussed at the hearing, to become a member one need only complete an application, pay a fee, and, in the case of one organization, complete an ethics exam.

Finally, of particular concern to this Court, is the fact that several other courts have determined, *inter alia*, Mr. Baggett is not qualified to testify. For example, in *Dracz v. American General Life Insurance Co.*, 426 F. Supp. 2d 1373 (M.D. Ga 2006), *aff'd*, 201 F. App'x 681 (11th Cir. 2006), a district court in the Middle District of Georgia determined Mr. Baggett was not qualified to testify as an opinion witness. Among other things, the court concluded Mr. Baggett's qualifications were "clearly paltry in comparison" to other document examiners whose testimony had been admitted in the same district and circuit. The court observed that Mr. Baggett, at the time, was not certified by the ABFDE or a member of any of the twenty nationally recognized document examiner trade organizations, had not subjected himself to any sort of proficiency tests or regular peer review, had never authored an authoritative text in his field, had never received training in notable government training programs, and had never taught in a recognized program for his field. *Id.* at 1378-79. Instead, the court observed, "[a]t most, the evidence shows that Mr. Baggett received the vast majority of his training in this field not from a recognized or accredited program but from Dr. Ray Walker, whose own qualifications as a document examiner are suspect; that he has worked as a document examiner based on this training for twenty-two years; and that he had a one- or two-year stint examining checks for forgeries as a consultant to the Dallas, Texas Justice of the

Peace Court and the Dallas County District Attorney's Office." *Id.*

Similarly, in *Blake v. West Virginia National Auto Insurance Co.*, No. 06-C-71 (Upshur Cnty. Cir. Ct. W.V. Sept. 5, 2007), a state court in West Virginia made detailed findings and ultimately determined Mr. Baggett was not qualified to offer testimony as a forensic document examiner. The court observed as a matter of law that Mr. Baggett lacked any formal training, that his apprenticeship with Ray Walker had not been shown to provide any meaningful instruction, that Mr. Baggett had never been "certified" as a forensic document examiner, and that he lacked any meaningful education and training in the field.

Since *Blake*, Mr. Baggett has taken steps to improve upon his credentials. In particular, Mr. Baggett is a member of three professional associations and he claims his work in this case was peer reviewed by Ms. Wendy Carlson. The Court also does not discount the fact that Mr. Baggett has been allowed to testify personally or through deposition at other trials in both state and federal court. However, viewing Mr. Baggett's record as a whole, this Court can find no meaningful distinction between his qualifications in 2006 and today that would convince this Court to veer from the conclusions drawn in *Dracz* and *Blake* that Mr. Baggett is not qualified to testify. Even under a "minimum indicia-of-reliability standard," this Court concludes that the issues raised with respect to Mr. Baggett's qualifications call into doubt the reliability of any testimony that he would offer. Accordingly, Mr. Baggett will not be allowed to testify at Defendant's sentencing as an expert.

### C. Credibility

Although the Court has decided that it will exclude testimony from Mr. Baggett at the sentencing hearing, the Court will also briefly note its concerns with respect to Mr. Baggett's credibility. Typically, in the trial context, "attacks on witness credibility are simply challenges to

the quality of [a party's] evidence and not to the sufficiency of the evidence" and "issues of witness credibility are for the jury." *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993). Stated differently, a witness's credibility generally goes toward the weight that the factfinder should give that witness's testimony, but should not affect its admissibility. With that said, it does not require a strain of the imagination to envision a scenario where the factfinder--in this case, the court--determines that a witness's credibility is so suspect that it affects the overall reliability of the witness's testimony. *Cf. In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 156-57 (3d Cir. 1999) (noting that "[w]e would be hard pressed to require a District Court judge sitting in a non-jury case who credibly and with reason found that he could not believe a witness to nevertheless hear the witness's direct examination, cross-examination, and rebuttal examination in an extended trial when he knew that he would only reject it as unbelievable.").

Here, as the factfinder at sentencing, this Court has grave concerns about Mr. Baggett's credibility. At a minimum, these concerns would have greatly affected whether the Court would have given any weight to Mr. Baggett's testimony had he been allowed to testify. They also lend further credence to the Court's conclusion that opinion testimony offered by Mr. Baggett would not have carried a "sufficient indicia of reliability to support its probable accuracy." *See* § 6A1.3. First, in an unpublished decision, the Court of Appeals of Texas expressed that a prosecutor's use of the term "charlatan" at trial in reference to Mr. Baggett "was proper as a reasonable deduction from the evidence" and noted that a "charlatan" is defined as "a pretender to medical knowledge: a quack."[4]

---

[4] Mr. Baggett was not testifying in *Brown* as a document examiner. Instead,

Baggett testified that he was a psychologist, hypnotherapist, psychotherapist, and graphologist, and that he had been designated by the court as an expert witness in this case. The court noted that Baggett had not been properly qualified as an expert,

13

*Brown v. State of Texas*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. Crim. App. Feb. 9, 1999). Although this case dates back to 1999 and pertained to Mr. Baggett's testimony in fields other than document examination, the Court of Appeals of Texas' affirmation of the prosecutor's statement certainly raises a red flag as to Mr. Baggett's credibility given that he was willing to put himself forward as an expert in a field for which the Court determined he was not qualified.

The Court is also troubled by Mr. Baggett's criminal history. Mr. Baggett has received felony convictions for theft and aggravated assault dating back to approximately 1989 and 1998, respectively. Mr. Baggett also received a deferred adjudication after pleading guilty to the misdemeanor offense of Tampering with a Government Record in 2000, which stemmed from his failure to truthfully disclose his criminal history on a government form. The Court recognizes that even the most recent of these events occurred nearly twelve years ago and that Mr. Baggett has not had any recent encounters with law. Nevertheless, these incidents greatly detract from Mr. Baggett's credibility, especially given that one of these offenses directly implicates his character for truthfulness.

Even more troubling than the convictions themselves is Mr. Baggett's explanation for the convictions. For the theft conviction, he swore he inadvertently picked up a computer part at the post office and, when he took it back, was convicted for theft of a computer. With respect to the assault conviction, he testified a guy threatened him and he merely "shot up in the air" yet was convicted

---

> and Baggett retracted his testimony that the court had designated him as an expert in this case. Baggett testified that he is not licensed as a psychologist or a psychotherapist and has not practiced therapy full-time for fifteen years, although he still conducts occasional weight loss and stress management seminars. Baggett works primarily in real estate and financial planning.

*Brown*, 1999 WL 61858, at *8.

of aggravated assault. Not only do Mr. Baggett's explanations sound implausible, but the description of Mr. Baggett's offenses in the opinions of the courts tell a completely different story from what was presented to this Court. Thus, it appears to the Court that Mr. Baggett was testifying untruthfully at Defendant's sentencing hearing with respect to his prior criminal record.

Accordingly, the Court concludes Mr. Baggett lacks the necessary qualifications to testify at Defendant's sentencing hearing as an expert in the fields of document examination and handwriting analysis.[5] This decision is further justified by the additional concerns raised regarding Mr. Baggett's credibility. The Court will strike from the record Mr. Baggett's report and attachments opining on issues in this case.

### III. MOTION FOR CONTINUANCE AND OBTAINING AN INDEPENDENT EXPERT EXAMINER

Defendant has two motions pending before this Court: (1) a motion for the Court to consider the opinion testimony of an additional document examiner and (2) a motion to continue the sentencing hearing.[6] First, Defendant seeks to tender Grant R. Sperry as an opinion witness at the

---

[5] In light of the Court's determination that Mr. Baggett is not qualified to testify as an opinion witness in this matter, the Court does not need to engage in any further discussion about the reliability of Mr. Baggett's methodology or the substance of his opinions.

[6] On April 27, 2012, Defendant submitted a notice and summary of filings with respect to two new document examiners: Grant Sperry and Thomas Vastrick (Court File No. 443). The Court appreciates the fact that Defendant did attempt to obtain testimony from opinion witnesses whose qualifications appear to far exceed that of the previous opinion witness. The Court will take the updated information and report into account with respect to Sperry. However, at this late stage, the Court will not consider the additional filings with respect to Vastrick, who had never been mentioned until this filing and was not the subject of Defendant's motion for a substitute document examiner. The Court also notes that its reasons for rejecting Sperry as a substitute opinion witness would also have generally applied to Vastrick.

sentencing hearing. The Court will construe Defendant's motion as a request to substitute Mr. Sperry as an opinion witness given that this Court has excluded Mr. Baggett's testimony. Defendant contends Mr. Sperry is a qualified and credible document examiner. She requests a continuance in part so that Mr. Sperry will have sufficient time to obtain necessary data and perform an analysis of her signatures.[7] The Government is opposed to Defendant's request to obtain an independent forensic document examiner as well as the motion for a continuance as it pertains to Mr. Sperry.

A district court has broad discretion to grant or deny a continuance. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Whitfield*, 259 F. App'x 830, 835 (6th Cir. 2008). A reviewing court will take into consideration the following factors when examining a district court's decision to deny a motion to continue to obtain a witness: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which the testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Whitfield*, 259 F. App'x at 835 (quoting *Bennett v. Scroggy*, 793 F.2d 772, 774 (6th Cir. 1986)). A decision to deny a continuance is only an abuse of discretion if there is "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Slappy*, 461 U.S. at 12; *Broom v. Mitchell*, 441 F.3d 392, 414 (6th Cir. 2006) (citation omitted). The defendant would also have to show that "the denial resulted in actual prejudice to [her] defense." *Broom*, 441 F.3d at 414-15.

The Court has carefully considered both parties' arguments as they pertain to Defendant's

---

[7] Defendant also sought a continuance of the April 11, 2012 sentencing date because Defendant's psychiatrist Dr. Rafuls was unavailable. The Government does not oppose the motion for continuance as it pertained to Dr. Rafuls.

motions. Although the Court appreciates Defendant's recent efforts to obtain a substitute document examiner, the Court concludes her request for a second continuance should be denied. First, greater diligence on the part of Defendant earlier in the process could have prevented the need for a second continuance. Defendant requested a continuance prior to sentencing, *inter alia*, to have more time to obtain witnesses, which the Government did not object to and the Court granted. Minimal research into Mr. Baggett's qualifications and credibility would have unearthed the concerns brought to the forefront by the Government at Defendant's sentencing hearing. The predicament Defendant has now found herself in and the resulting delay could have been avoided had she been more thorough in investigating the background of her initial opinion witness, and, having done so and identified the potential red flags, considered a suitable alternative in the event the Court determined the witness was not qualified.

The Court is also concerned with the degree to which Mr. Sperry's testimony will be favorable to Defendant. Defendant has worked quickly over the past few weeks to obtain a report from Mr. Sperry for the Court to consider in conjunction with the pending motions, and Mr. Sperry's qualifications do appear to far exceed those of Mr. Baggett. The Court also recognizes that Defendant has raised a novel argument regarding whether Defendant penned the electronic signatures at issue and no other opinion testimony has been offered in support of this theory. With that said, it is less than clear that Mr. Sperry's testimony will be favorable to Defendant, which is a primary consideration for the Court in determining whether or not a continuance should be granted. Among other things, Mr. Sperry found

> There exists a wide range of variation between the 'Mary C. Revels' signatures contained within Exhibit Q-1 (1-45). Whether or not the diverse writing features and styles comprising the unusually wide range of variation is attributable to only one writer, could not be determined. . . .

17

> . . .
>
> The less than definitive conclusions provided above are due, in part, to the inherent limitations encountered in the examination of office machine copied documents and electronically produced signatures. Examination of the originals of Exhibit Q-1 and/or their corresponding digital (sig) file, may provide for more definitive conclusions.

(Court File No. 443-1 at 4-5). Although Mr. Sperry offers an analysis of Defendant's signatures for the Court's consideration, the substance of his analysis is not particularly helpful or favorable for Defendant due to the lack of uncertainty. The heart of Mr. Sperry's report is that he could not make a definitive finding as to whether the MethCheck signatures belonged to Defendant. It also appears that the lack of certainty stems from the fact that the MethCheck signatures were electronic signatures, and Mr. Sperry would need even more time to obtain and examine original files, which may or may not provide any additional insight into the matter at hand. The Court recognizes that Defendant wants additional time to explore her theory because she believes it has merit. At the same time, even before filing Mr. Sperry's report, Defendant acknowledged she did not know whether the question of which signatures should be attributed to her could be answered with any degree of certainty, but she was requesting a continuance "in hopes of obtaining an answer" (Court File No. 442). Continuing to delay Defendant's sentencing hearing, however, in the absence of sufficient knowledge that the opinion testimony would even be favorable to Defendant is unjustifiable at this late stage. *See United States v. Knorr*, 942 F.2d 1217, 1222 (7th Cir. 1991) (affirming the district court's decision to deny the defendant's second motion to continue sentencing and noting that "[t]he mere possibility that some additional evidence would be obtained to further contest the nature of the defendant's role in the offense is insufficient to overcome our deference to the district judge in this area").

Finally, the Court notes its hesitancy toward setting a precedent where a party, in the midst of a sentencing proceeding that has already begun, can seek a continuance to obtain a new witness every time the Court deems one of its witnesses unqualified. Such a practice not only creates management problems for the Court but could also become a regular fallback option for parties who have not been diligent in their efforts to retain qualified experts for hearings and trials. The Court recognizes there may be situations where a continuance to obtain a substitute witness may be warranted, but it is not convinced that this is one of them. Rather, this Court concludes Defendant has had an "adequate opportunity" to present information to the Court with respect to the disputed issue, and her request for another continuance of sentencing should be denied. *See* USSG § 6A1.3.

In light of the speculation and lack of certainty regarding the helpfulness of Mr. Sperry's testimony, as well as the late timing of Defendant's request, the Court concludes that granting another continuance in this case would amount to an unjustifiable delay. The Court will deny Defendant's motion to obtain a substitute document examiner and will deny Defendant's request for a continuance for this purpose. The Court will move the sentencing date, however, to accommodate the schedule of Defense witness Dr. Rafuls.

## IV. CONCLUSION

In conclusion, the Court will **EXCLUDE** the testimony of Mr. Baggett and strike from the record any testimony that has been offered by Mr. Baggett as part of Defendant's hearing to date. (*See* Court File No. 432). The Court will **DENY** Defendant's motion for the Court to consider the opinion testimony of an additional document examiner (Court File No. 438). The Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to continue the sentencing hearing

19

(Court File No. 437). Although the Court will not continue the hearing for Defendant to obtain a new document examiner, the Court will grant Defendant's request to reschedule the hearing for a date that will accommodate Dr. Rafuls, another opinion witness for Defendant. The sentencing hearing will be reconvened on **Friday, May 11, 2012 at 9:00 a.m.**

    An Order shall enter.